UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

In Re: Zurn Pex Plumbing                          Court File No. 08-MDL-1958 ADM/AJB
Products Liability Litigation

This Document Relates to:

    *All Actions*

_____

### Order Granting Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement and Form and Dissemination of Notice to the Class

_____

The parties to this multi-district litigation have reached a settlement for which they now seek preliminary approval pursuant to Rule 23 of the Federal Rules of Civil Procedure. Having presided over this litigation for more than five years, the Court is familiar with the background of the cases, the claims and defenses presented, and the substantial amount of litigation conducted by the parties to-date.

The Motion for Preliminary Approval of Class Action Settlement was heard on October 15, 2012.  After review of pleadings and briefing, and having heard the arguments of counsel for good cause shown, it is hereby **ORDERED** that: (1) the Motion for Preliminary Approval of Class Action Settlement Agreement; (2) preliminary and conditional certification of a settlement class; (3) approval of the form and content of Notice of settlement; (4) an injunction and stay of all claims and actions against the Zurn Defendants; and (5) setting of a final fairness hearing and deadlines are **GRANTED** as follows:

1.    The Judicial Panel on Multidistrict Litigation ("JPML") centralized and transferred three Zurn cases to the Court on August 21, 2008.  (Docket No. 1, Schedule A).

Subsequently, twelve other Zurn cases were filed in Minnesota and other district courts and transferred to this Court.

2.      For the last five years, the Court has overseen this litigation involving claims related to corrosion or potential corrosion of yellow brass plumbing fittings ("F1807 Fittings") formerly manufactured and/or sold by Zurn Pex, Inc. and Zurn Industries LLC ("Zurn Defendants"). The parties have engaged in extensive discovery, pretrial motion practice, expert discovery, class certification, *Daubert* motion practice, and other pretrial litigation. As an MDL transferee court, the Court has been involved in the management and coordination of cases from across the country and has had the benefit of a substantial record developed by the parties.

3.      The parties have engaged in a number of daylong, arms' length settlement conferences with Chief Magistrate Judge Arthur Boylan. These conferences followed mediation sessions with two private mediators. The Zurn Defendants' insurers had disclaimed coverage for the claims asserted in these actions and commenced an action seeking a declaration that they did not owe the Zurn Defendants a defense or indemnity for claims related to the F1807 Fittings.

4.      After months of negotiations involving the parties and their attorneys, as well as insurance coverage counsel for the Zurn Defendants and their insurers, the parties have presented a proposed nationwide class action settlement (the "Settlement") and have submitted their Class Action Settlement Agreement and Release (the "Agreement") for the Court's consideration and preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. The Court, being familiar with the settlement negotiations and being apprised by

Magistrate Judge Boylan of the significant amount of effort that went into the negotiation of this Agreement, is satisfied that the Settlement was the result of hard-fought and arm's length negotiations.

5.     The proposed Settlement in the Agreement executed by Class Counsel on behalf of Plaintiffs and executed on behalf of the Zurn Defendants is preliminarily approved, subject to a final fairness hearing as provided for in this Order to finally determine whether the settlement is fair, adequate, and reasonable.

6.     The parties have presented a plan to the Court to provide notice of the terms of the Settlement and the options the members of the settlement class ("Settlement Class") have, including, among other things, to opt out of the Settlement Class, to be represented by counsel of their choosing, to object to the Settlement, to do nothing, or to participate as a claimant in the Settlement.  The plan for providing notice (the "Notice Plan") proposed by the Plaintiffs and the Zurn Defendants (the "Settling Parties") is the best practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23.

7.     In addition, the Court finds the proposed claims procedure is fair and sufficient, and the Notice Plan provides sufficient detail to the members of the Settlement Class. It is appropriate to proceed with preliminary approval and implementation of the Notice Plan.

8.     Under the terms of the Settlement, the Zurn Defendants will pay up to $20 million to compensate members of the Settlement Class for corrosion damage associated with F1807 Fittings, will fund a claims administration process, and will pay for the cost of the Notice Plan.  The Zurn Defendants have also agreed to pay up to $8.5 million in

attorneys' fees and expenses to Class Counsel, subject to the Court's approval of an application for attorneys' fees and expenses.

9.      The Court has carefully reviewed the terms of the Settlement and the benefits being made available to members of the Settlement Class.  The Court is satisfied that counsel have submitted sufficient information to support the conclusion that there are no obvious deficiencies in the proposed Agreement, that the proposed Settlement Class satisfies the class-action requirements set forth in Federal Rule of Civil Procedure 23 (a) and (b) for purposes of a settlement class only, and that potential members of the Settlement Class should be notified of the proposed Settlement and a final fairness hearing should be scheduled.

10.     In considering this motion for preliminary approval, the Court was mindful of Rule 23 jurisprudence including *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011), and *Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975).

11.     As detailed below, continued or additional litigation involving claims against the Zurn Defendants will interfere with the Court's jurisdiction to consider, approve, and effectuate the Settlement, which necessitates temporary injunctive relief in aid of the Court's jurisdiction.

## Preliminary Approval of Settlement Class

12.     This case is provisionally and conditionally certified, subject to final approval of the Settlement in conjunction with the final fairness hearing, as a class action for

settlement purposes only pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

The Class shall be defined as follows:

> All Persons that own or have owned buildings, homes, residences or any other structures located in the United States that contain or have ever contained F1807 Fittings. Also included in this class are all such Persons' spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all Persons who have vested legal rights such that they have legal standing and are entitled to assert a claim on behalf of such Settlement Class Members for Leaks or Occlusions.  Insurance carriers are members of the Settlement Class for Leaks and Occlusions if they paid insurance claims for Leaks or Occlusions prior to the  date of the Preliminary Approval Order and thereby obtained legally vested subrogation rights.

> Persons who seek contribution or indemnity from the Zurn Defendants on past settlements of claims with Settlement Class Members involving Leaks or Occlusions are members of the Settlement Class for those Leaks and Occlusions if they paid those settlements prior to the date of the Preliminary Approval Order and thereby obtained vested legal rights to pursue such contribution or indemnity claims.  To the extent there may in the future be subrogated insurance carriers or Persons who seek contribution or indemnity from the Zurn Defendants because of vesting of legal rights that occurs after the date of the Preliminary Approval Order, they shall not be Settlement Class Members, but the rights that they take through a Settlement Class Member shall be limited by all of the terms, time periods, releases, caps, no double recoveries and other provisions of this settlement.

13.     Persons and entities excluded from the Settlement Class ("Excluded Persons") are:

a.     All persons and entities who, on a timely basis, exercise their rights under Rule 23 of the Federal Rules of Civil Procedure to opt out of the Settlement pursuant to the terms of the Agreement and this Order;

b.      All persons and entities who have settled or otherwise resolved claims against the Zurn Defendants or other released parties arising out of or in connection with the corrosion or potential corrosion of one or more F1807 Fittings, to the extent of the resolution of those claims;

c.      The Zurn Defendants, any entity in which the Zurn Defendants have a controlling interest, any entity which has a controlling interest in the Zurn Defendants, and Zurn Defendants' legal representatives, assigns, and successors; and

d.      The presiding judge and any member of the judges' immediate family.

14.      The Court finds that the Class definition is appropriate, ascertainable, and is not overly broad. The proposed Settlement provides significant benefits to the Class Members, including establishment of a claims process that will make substantial payments for damage resulting from leaks or occlusions of water flow caused by corrosion of F1807 Fittings.

15.      The Court preliminarily concludes that, for purposes of approving this Settlement only and for no other purpose and with no other effect on this litigation should the proposed Agreement not ultimately be approved or should the Settlement not become final, the proposed Rule 23 Settlement Class likely meets the requirements for certification under the Rule because:

a.      The proposed Settlement Class contains thousands of members and is so numerous that joinder is impracticable;

b.      There exist questions of fact and law common to the members of the Settlement Class, including (without limitation) whether the  F1807 Fittings are defective, prone to premature failure, and require replacement;

c.      The claims of the class representatives are typical and representative of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class members;

d.      The class representatives and Class Counsel have already and will continue to fairly and adequately protect the interests of the Settlement Class members; and

e.      Resolution of this litigation in the manner proposed by the Agreement is superior to other available methods for a fair and efficient adjudication of the action, and common issues resolved through this Settlement predominate over individual issues. Because this action is being settled rather than litigated, potential management problems if the case were tried are of lesser importance.  *See Amchem*, 521 U.S. at 591.  The Court is satisfied that individualized claims and defenses need not be adjudicated in order to approve the Settlement and that any individualized claims and defenses do not predominate rendering class certification inappropriate in the settlement context.

16.      Certification of the class for settlement purposes is appropriate because there is a "common nucleus of operative facts."  *U. S. Fid. & Guar. Co. v. Lord,* 585 F.2d 860, 872 (8th Cir. 1978); *see also Harju v. Olson*, 709 F. Supp. 2d 699, 735 (D. Minn. 2010) ("Factual variations in the individual claims will not normally preclude class certification if the claim . . . gives rise to the same legal or remedial theory.").

7

17.     On the ultimate issue of whether the Settlement provides significant benefits on behalf of all class members, the Class Representatives fairly and adequately represented the class members. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (D. Minn. 1995) ("The adequacy of class representation . . . is ultimately determined by the settlement itself.") (alteration in original) (quotation omitted).

18.     The terms of this Settlement provide up to 60 percent of costs related to leak damage with a per-leak cap of $100,000, and, for structures under 20,000 square feet with two or more leaks, the settlement will pay up to 60 percent of related damage and will be eligible for a replumb.  For a class member who is experiencing a reduction in water flow because of corrosion of F1807 Fittings, the settlement will pay remediation costs until normal water flow is restored.  If a class member experienced such a reduction in flow and already repaired it, the settlement will reimburse up to 60 percent of that cost.  This Settlement confers significant benefits and should be submitted to the Settlement Class for consideration and comment.

19.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Agreement between Plaintiffs, and all Settlement Class members who do not properly exclude themselves pursuant to Rule 23, and the Zurn Defendants is preliminarily approved.

20.     In making this determination, the Court finds that there is "'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).  Conditionally certifying a class in connection with preliminary approval allows notice to the class. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 427 n.2 (E.D. Tex. 2002).

21.     The evidence demonstrates that the Settlement, which is recommended by class action counsel with experience in product liability cases, falls well within a range warranting notice to absent class members.  The Zurn Defendants have agreed to pay Settlement Class members up to $100,000 for damage caused by each leak of an F1807 fitting and will pay up to 60 percent of the damage sustained because of such a leak.  After two qualifying leaks, a Settlement Class member whose structure contains less than 20,000 square feet of floor space may have their Zurn plumbing system replaced and may be reimbursed for 60 percent of that cost up to $7,000, as part of the $100,000 cap for the last leak.  After five qualifying leaks, a Settlement Class member whose structure contains more than 20,000 square feet of floor space may have their Zurn plumbing system replaced and may be reimbursed for 60 percent of that cost up to $100,000 for the cost of the replacement combined with the cost of the damage for the last leak.

22.     The Settlement also allows subrogated insurance carriers and others who have a right to assert a claim for  damage resulting from corrosion of F1807 Fittings to make a claim.  The Settlement also provides benefits to owners of F1807 Fittings that have not yet leaked but which are displaying evidence of flow impairment because of corrosion of the Zurn F1807 fittings.

23.     Applicable Zurn warranties remain in place under the Settlement for problems not related to corrosion of the brass F1807 fittings and the claims process will stay open for seven years after the Settlement becomes final and effective. The Zurn Defendants have agreed to pay up to $20 million for payment to or on behalf of Settlement Class members for damage claims and remediation and re-plumbing benefits under the Settlement.  Similar

benefits will be available to claimants whose F1807 Fittings experienced leaks or caused occlusions in the past and those who have such problems in the future.

24.     The Zurn Defendants will also pay for the cost of an independent claims administrator, an independent engineering consultant, the cost of the Notice Plan, up to $8,500,000 for an award of attorney fees and costs, and incentive awards for the class representatives if approved by the Court.  Those expenses will be paid in addition to the $20 million settlement fund, making the total value of this settlement approximately $30 million.

25.     If final approval is given to the Settlement, claimants may file claims for leaks or occlusions of F1807 Fittings that occurred before final approval as well as those that occur during the seven-year claim period.  The claim process itself is a valuable benefit to members of the Settlement Class because it removes warranty defenses Zurn has previously asserted for corrosive water conditions and provides a streamlined and cost effective way for claims to be processed and paid.   The benefits inure to Settlement Class members who have not yet had leaks or occlusions as well as those who have, because they have the ability to make claims under the Settlement if they have qualifying leaks or occlusions for seven years after the Settlement becomes final and effective, as compared with more years of expensive, uncertain, and contested litigation.

26.     This litigation was hotly contested and its outcome was by no means certain. The parties disagreed about the cause of the problems with the Zurn systems and whether Zurn had any legal liability for the problems.  The Settlement provides the members of the Settlement Class with an immediate and substantial source of recovery while eliminating the risk that further litigation would yield little or no recovery.  The Settlement also eliminates

risks associated with insurance coverage disputes between the Zurn Defendants and their insurers and allows class members to avoid risks and contingencies relating to the ability to collect any future judgment against the Zurn Defendants.

27.     The Settlement followed thorough investigation and discovery and is the product of arm's-length negotiation between experienced, capable counsel, assisted by an experienced and capable magistrate judge and two private mediators.  *See* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("Newberg") ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval.").  In the final-approval context, courts have given substantial weight to the experience of the attorneys who prosecuted and negotiated the settlement.  *See, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).  There are no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys.

28.     Class Counsel's recommendation for preliminary approval reflects their reasonable conclusion that the Settlement Class would benefit more by the creation of a settlement fund and claims process funded by the Zurn Defendants now than the risky prospect of taking these cases through dispositive motions, trial, appeals, and then trying to pursue and collect judgments against the Zurn Defendants.

**Appointment of Class Representatives and Class Counsel**

29.     The Court appoints the following class representatives: Denise Cox, Terry Cox, Jody Minnerath, Brian Minnerath, Christa Haugen, Kevin Haugen, Carrie Hvezda,

Robert Hvezda, Michelle Oelfke, Beverly Barnes, Brian Johnston, Bridget Bohn, Paul Bohn, Charles A. Breaux, Sr., Coppersmith Plumbing, Darla Kolker, Anthony Kolker, Judith Nicodemus, Brenda Rose, Brian Rose, Donovan Shaughnessy, Alyssa Shaughnessy, and Don Vtipil, individually and on behalf of all Settlement Class members.

30.     To represent the Settlement Class and its members, the Court appoints Shawn M. Raiter of Larson • King, LLP as Lead Class Counsel and the following attorneys as Class Counsel:  Robert Shelquist of Lockridge Grindal Nauen, PLLP, Charles LaDuca of Cuneo, Gilbert & LaDuca, LLP, Christopher Coffin of Pendley, Baudin & Coffin, LLP, David Black of Perkins Coie LLP, Michael McShane of Audet & Partners, LLP, J. Gordon Rudd of Zimmerman Reed PLLP, Daniel K. Bryson and Gary E. Mason of Whitfield, Bryson & Mason, LLP, Joel R. Rhine of Rhine Law Firm, P.C., Mark J. Schirmer of Straus & Boies, LLP, and Rhett A. McSweeney of McSweeney/Langevin.

## Establishment of Claims Process

31.     The Agreement contemplates the establishment of a settlement fund and a claims process.  The Zurn Defendants will fund the claims process, including the payment of claims to be determined by an independent claims administrator, the cost of the claims process, the cost of the Notice Plan, and up to $8,500,000.00 for an award of attorney fees and costs, as ordered by the Court.

32.     The Settling Parties will prepare a claims procedure that sets forth with specificity the process for assessing and determining the validity and value of claims and a payment methodology to qualifying Settlement Class Members.

33.     The Settling Parties will retain the services of a Claims Administrator, Remediation Contractors, Independent Engineering Consultant, and a Special Master for assistance with the Claims Process. The Claims Administrator shall be responsible for effectuating the Claims Process. The Special Master shall be responsible for resolving disputes, if any, arising from the Claims Process. The Zurn Defendants shall pay all reasonable fees and expenses of the Claims Administrator, Independent Engineering Consultant, and Special Master. Amounts for fees and expenses of the Remediation Contractors, for re-plumbing or remediation services described in the Settlement Agreement, shall be paid out of the settlement fund pursuant to the terms set forth in the Settlement Agreement.

### Notice Plan

34.     The Court approves the Notice Plan and the form and content of the settlement notices proposed in the Agreement.

35.     Notice to members of the Settlement Class and the statutory notice required to be given by the Zurn Defendants pursuant to 28 U.S.C. § 1715, shall be the responsibility of the Zurn Defendants. To effect such notice, the Court understands that the parties have engaged Hilsoft Notifications  ("Hilsoft") to advise them on providing notice. Hilsoft has proposed a Notice Plan that will provide notice to the members of the Settlement Class consistent with the Agreement and as ordered below.

36.     The Notice Plan detailed by Hilsoft in the Affidavit of Cameron Azari provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Agreement, the right to remain in the case or to opt out, the right to

object, and provided notice of the final fairness hearing to all persons and entities entitled to receive such notice as potential members of the Settlement Class.

37.     The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); *Manual for Complex Litigation* § 21.311, at 288 (4th ed. 2004).

38.     In situations such as this action, where class members cannot be identified for purposes of sending individual notice, notice by publication is sufficient. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950); *see also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *Kaufman v. Am. Express Travel Related Servs. Co. Inc.*, 264 F.R.D. 438, 445-46 (N.D. Ill. 2009); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D. N.Y. 2007).

39.     The Notice Plan's multi-faceted approach to providing notice to Settlement Class members whose identity is not known to the Settling Parties constitutes "the best notice that is practicable under the circumstances" consistent with Rule 23(c)(2)(B). *See, e.g., In re Holocaust Victims Assets Litig.*, 105 F. Supp. 2d 139, 144 (E.D. N.Y. 2000) (approving plan involving direct-mail, published notice, press releases and earned media, Internet and other means of notice).

40.     The Notice Plan's multi-faceted approach includes direct mailing to known or suspected owners of F1807 Fittings covered by this Settlement, published notice, a settlement web site and "earned media" efforts through press releases and similar activities.

The anticipated "reach" of this Notice Plan exceeds 80 percent and meets due process requirements of Rule 23 of the Federal Rules of Civil Procedure.

### Opt-Out Procedure

41.     Notice to class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the class certified, the class member's right to appear through an attorney or opt out of the class, the time and manner for opting out, and the binding effect of a class judgment on members of the class.  Fed. R. Civ. P. 23(c)(2)(B).

42.     Compliance with Rule 23's notice requirements also complies with Due Process requirements. "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

43.     The proposed notice and explanation of the process to opt out of this Settlement meet due-process requirements.  The proposed notice explains the action, who is included in the case, and the right to opt out or appear through an attorney.  The notice also describes the time and manner for opting out.

44.     Prospective members of the Settlement Class can readily determine whether they are likely to be class members, since membership depends largely on presently or previously owning a building or property that contains or has ever contained Zurn F1807 Fittings.  The stamps placed on the fittings and the availability of documentary evidence make inclusion in the Settlement Class readily ascertainable.

15

45.     The Notice Plan will advise Settlement Class members of their ability to opt out of the Settlement and pursue their claims individually. The Court approves the notice of the right to opt out of the case because the notice explains the process and right to opt out of the Settlement.

46.     A Settlement Class member that seeks to be excluded from the Settlement must send a letter or opt-out form requesting to be excluded.  The letter or opt-out form must include the following: (1) the class member's name, current address, and telephone number; (2) the address of the structure that contains or contained the F1807 Fittings; (3) a statement or good faith estimate of the property's square footage; (4) a general description of the type of property, e.g., "single family residence"; (5) the date the  F1807 Fittings were installed; (6) the date the building containing the F1807 Fittings was constructed; (7) whether the F1807 Fittings have already leaked; (8) the date of any leaks; and (9) a good faith estimate of the amount of damages, if any, that the class member opting out will be claiming against the Zurn Defendants.

47.     The completed letter or opt-out form must be signed by the potential Settlement Class member having a legal interest in the property being opted out, even if represented by counsel.  If the Settlement Class member has entered into a written or oral agreement to be represented by counsel, the opt-out form must also be signed by the attorney.  The decision to opt out of a class action settlement is an individual decision and may not be made on behalf of a certified or putative class or on a mass or representative basis.

48.     A Settlement Class member's letter or opt-out form requesting exclusion must be postmarked by January 29, 2013.  Letters must be mailed to the following address:

Zurn Pex Claims Administrator
P.O. Box 0000
City, ST ZIP

The actual address used for these mailings will be established by the Claims Administrator and  will be provided in the notice communications and on the Settlement web site.

49.     Except for those potential members who have filed a timely and proper opt-out form, all others will be deemed Settlement Class members for all purposes under the Agreement.

50.     Class Counsel may contact persons who file an opt-out form or letter, may challenge the timeliness and validity of any opt-out request, and may effect the withdrawal of any opt-out form filed in error and any exclusion which that Settlement Class member wishes to withdraw for purposes of participating in the Settlement as set forth in the Agreement.  The Court shall determine whether any of the contested opt outs are valid.

51.     The Notice Plan will advise class members of the option to exclude themselves from the Settlement and pursue their claims individually.  Notice periods for opting out are "almost wholly an exercise of the Court's discretion."  *In re Potash Antitrust Litig.*, 161 F.R.D. 411, 413, n.4 (D. Minn. 1995).  The opt-out period of 45 days provided for in the Settlement is reasonable.  *See, e.g., id.* ("In selecting a 60-day period, we are satisfied that the period allowed will neither compel an unnecessarily rushed response, nor will it lull

the potential class member[s] into complacency"). Federal courts have regularly approved opt-out periods in which the deadline to opt out was 45 days or fewer.[1]

52.     Notice to Settlement Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the class certified, the class member's right to appear through an attorney or opt out of the class, the time and manner for opting out, and the binding effect of a class judgment on members of the class.   Fed. R. Civ. P. 23(c)(2)(B).  Compliance with Rule 23's notice requirements also complies with Due Process requirements.   "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment." *Prudential*, 148 F.3d at 306.

53.     The proposed notices in the present case meet those requirements.   They explain the action, the definition of the Settlement Class, and the right to opt out or appear through an attorney.  They also describe the time and manner for opting out.

54.     Prospective Settlement Class members can readily determine whether they are likely to be class members, since membership depends largely on presently or previously owning a structure that contains F1807 Fittings.  Periods of  two months or less for opting

---

[1] *Id.*; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (affirming 31-day opt-out period pursuant to dual notice plan, even though one-third of the class members received untimely notice); *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (affirming 32-day opt-out period and noting that "[f]or due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave 'the best notice practicable under the circumstances'"); *Fidel v. Farley*, 534 F.3d 508, 513-15 (6th Cir. 2008) (affirming 46-day opt-out period and recognizing that publication notice and notice provided to brokerage houses on behalf of stockholders satisfies due process); *In re OCA, Inc. Sec. & Deriv. Litig.*, Civ. A. No. 05-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) (approving 39-day opt-out period and noting that courts have typically found notice sent to brokerage houses adequate, even where the notice was not then sent to class members in a timely manner).

out have been approved in other cases. *See, e.g., Supermarkets Gen. Corp v. Grinnell Corp.*., 490 F.2d 1183, 1184-85 (2d Cir. 1974); *Pierce v. Novastar Mortg., Inc.*, No. C05-5835, 2007 WL 1046914, at *2 (W.D. Wash. Apr. 7, 2007).

## Objections to Settlement

55.     A member of the Settlement Class may object to the Agreement by filing a written objection.  To exercise this right to object, a Settlement Class member must provide a written notice of objection by letter via first class mail to Lead Class Counsel and Counsel for the Zurn Defendants by the objection deadline.  The letter must be signed by the member of the Settlement Class, even if they are represented by counsel, and include the date the class member signed.  The letter must specify: (1) the name of the lawsuit *In re Zurn Pex Plumbing Products Liability Litigation*, Case No. 0:08cv01958; (2) the class member's current address and telephone number; (3) whether, on the date of the written objection, the class member owns a structure or formerly owned a structure containing a Zurn PEX system with F1807 fittings; (4) the address of the property that may contain or have contained the F1807 fittings; (5) proof that the structure contains a Zurn PEX system with F1807 fittings, such as photographs, contemporaneous installation records, and other similar evidence; (6) the exact nature of the objections, the facts underlying the objection, and whether the class member intends to appear at the final fairness hearing; and (7) all evidence and supporting papers, including, but not limited to, all briefs, written evidence, and declarations, that the class member wants the Court to consider in support of the objection.

56.     If the Settlement Class member is represented by counsel, the objection must also be signed by the attorney.

57.     Any Settlement Class member who objects must make themselves available for a deposition within twenty-one (21) days of serving the objection, must make the structure at issue available for inspection and confirmation that it contains a Zurn PEX F1807 plumbing system, and must provide documents requested by Class Counsel and Counsel for the Zurn Defendants.  The failure to comply with these requirements may result in the objection being overruled.

58.     Lead Class Counsel, Counsel for the Zurn Defendants, and the Clerk of Court must be served with copies of the objections, postmarked no later than January 29, 2013.

59.     Any attorneys hired by individual Settlement Class members for the purpose of objecting to the proposed Settlement shall file with the Clerk of Court and serve on Lead Class Counsel and counsel for the Zurn Defendants a notice of appearance, no later than January 29, 2013.

60.     All objection letters and related documents must be postmarked by January 29, 2013.  A copy of the objection letter must be mailed to each of these three addresses:

Clerk of the Court
U.S. District Court for the District of Minnesota
300 South Fourth Street
Suite 202
Minneapolis, MN 55415

Shawn M. Raiter
Larson King, LLP
30 East Seventh Street
Suite 2800
Saint Paul, MN 55101

James A. O'Neal, Daniel J. Connolly, and Amy R. Fiterman
Faegre Baker Daniels LLP
90 South Seventh Street
Suite 2200
Minneapolis, MN 55402

61.     No person or entity shall be entitled to contest the approval of the terms and conditions of the Agreement or the final order and judgment requested thereon except by filing and serving written objections in accordance with the provisions of this Order and the Agreement.  Any member of the Settlement Class who does not submit a timely, written objection in compliance with all of the procedures set forth in this Order and the Agreement shall be deemed to and shall have waived all such objections and will, therefore, be bound by all proceedings, orders, and judgments in this case, which will be preclusive in all pending or future lawsuits or other proceedings.

**Stay of Proceedings and Preliminary Injunction**

62.     The Settlement appropriately seeks entry of a temporary injunction prohibiting Settlement Class members from participating in any other proceeding in any jurisdiction based on or relating to corrosion or potential corrosion of the F1807 Fittings during the notice and opt-out period between preliminary approval and the final fairness hearing.  This type of injunctive relief is commonly granted in preliminary approvals of class-action settlements pursuant to the All Writs Act and the Anti-Injunction Act.

63.     The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a) (2006).  The Act empowers a federal court to "enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the

court's power to bring the litigation to a natural conclusion.'" *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

64.     Although the Anti-Injunction Act limits a federal court's powers under the All Writs Act, it expressly authorizes a federal court to enjoin parallel state court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (2006).  "[T]he parallel 'necessary in aid of jurisdiction' language is construed similarly in both the All Writs Act and the Anti-Injunction Act." *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985).

65.     It is undisputed that if the Settlement is finally approved, all of the cases that would be subject to the injunction would become moot absent timely and valid opting out by the involved Settlement Class member on an individual basis.

66.     Accordingly, the Court hereby orders that any actions or proceedings pending in any court in the United States involving F1807 Fittings, except any matters necessary to implement, advance, or further approval of the Agreement or settlement process, are stayed pending the final fairness hearing and the issuance of a final order and judgment.  This includes, without limitation, the cases listed on the list attached hereto as Exhibit A.

67.     In addition, all members of the Settlement Class are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on or

relating to the F1807 Fittings, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, or the Agreement.  In addition, all members of the Settlement Class are hereby preliminarily enjoined from filing, commencing, prosecuting, or maintaining any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action in any jurisdiction) on behalf of members of the Class, if such other class action is based on or relates to the F1807 Fittings, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, and/or the Agreement.  The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over this action.  The Court finds no bond is necessary for issuance of this injunction.

68.     Federal courts' broad authority under the All Writs Act encompasses the power to enjoin both subsequent and parallel arbitration proceedings.  *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994) ("No matter what, courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations."); *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 914-15 (8th Cir. 2010) (noting that "the district court has the inherent ability to protect its own jurisdiction over the dispute pending before it," and affirming the district court's *sua sponte* injunction of parallel arbitration proceedings); *In re PaineWebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS., 1996 WL 374162, at *4 (S.D. N.Y. July 1, 1996) ("[I]t would be incongruous if the Court had the authority to stay pending litigation, but not to enjoin arbitration, 'in aid of its jurisdiction' even before judgment is entered.").

69.     In cases such as this, where parties to complex, multidistrict litigation have reached a settlement agreement after lengthy, protracted, and difficult negotiations, parallel proceedings can "'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation" and threaten to "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims." *In re Baldwin-United*, 770 F.2d at 337; *see also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (finding threats to court's jurisdiction "particularly significant where there are conditional class certifications and impending settlements in federal actions").

70.     An extensive body of federal caselaw recognizes that complex, multidistrict litigation like this one implicates special considerations under the All Writs Act.[2]  "In

---

[2] *See In re Baldwin-United Corp.*, 770 F.2d at 337 (stating that complex class action pending before the federal district court "was the virtual equivalent of a res over which the district judge required full control"); *In re Asbestos Sch. Litig.*, No. 83-0268, 1991 WL 61156, at *3 (E.D. Pa. Apr. 16, 1991) (staying state court proceedings is proper under federal law "where a federal court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective."), *aff'd mem.*, 950 F.2d 723 (3d Cir. 1991); *In re Prudential*, 314 F.3d at 104 ("[D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state courts."); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 202-03 (3d Cir. 1993) (approving of *In re Baldwin-United* and *In re Asbestos Sch. Litig.*, and noting that complex class actions may be appropriate instances in which to enjoin parallel proceedings); *Newby*, 302 F.3d at 301 ("The district court had authority to compel lawyers properly before it from engaging in vexatious and needlessly harassing maneuvers that challenged judicial efforts to . . . preserv[e] fair processes in the complex suit in federal courts."); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. Unit A Oct. 1981) (affirming injunction in a "complicated antitrust action [that] has required a great deal of the district court's time and has necessitated its ability to maintain a flexible approach in resolving the various claims of the many parties"); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (approving of appellate decisions in which "courts have extended the exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation"); *Liles v. Del Campo*, 350 F.3d 742, 746-47 (8th Cir. 2003) (affirming district court's injunction in class action to ensure enforceability of the preliminary settlement approval and to prevent further depletion of settlement fund); *Negrete v. Allianz*

complex cases . . . , the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court." *In re Diet Drugs,* 282 F.3d at 236.

71.     The All Writs Act empowers district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651; *see also Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

72.     "Whether viewed as an affirmative grant of power to the courts or an exception to the Anti-Injunction Act, the All-Writs Act permits courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members." *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.D.N.Y. 1990).  "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (upholding order for telephone company to assist with pen register).

---

*Life Ins. Co. of N.A.*, 523 F.3d 1091, 1102 (9th Cir. 2008) (commenting that "the existence of advanced federal in personam litigation [that] may, in some instances, permit an injunction in aid of jurisdiction . . . is a fairly common theme"); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("[I]t makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered.").

73.     "[D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state fora." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104 (3d Cir. 2002).  Concerns of Defendants in large class actions about remaining exposure to "countless suits in state court despite settlement of the federal claims" are a consequence "that would seriously undermine the possibility for settling any large, multi-district class action." *Id.* at 104-05 (quotations omitted).  Permitting collateral attacks to disrupt such a settlement would undermine "Congress's purposes underlying diversity jurisdiction and the Multidistrict Litigation Act, 28 U.S.C. § 1407, an application of Congress's constitutional power to regulate interstate commerce." *Id.* at 105.  Accordingly, the All-Writs Act authorizes this Court to certify the class and enjoin other litigation.

74.     This is a decidedly complex, multidistrict class action involving lengthy negotiations and a proposed settlement reached after years of motion practice and discovery and days of formal and informal arm's-length negotiations.  The Court has the power and authority to enjoin current or future federal proceedings regarding and future state court proceedings. *See Newby*, 302 F.3d at 301 (noting that the Anti-injunction Act "does not preclude injunctions against a lawyer's filing of *prospective* state court actions") (emphasis in original).

75.     The requested injunction relief will impact only a few existing lawsuits.  None of the plaintiffs in these cases would be unduly prejudiced by a temporary injunction pending the final fairness hearing.  It is undisputed that if the Settlement is finally approved, all of the cases that would be subject to the injunction would become moot unless the plaintiffs in those cases properly excluded themselves from this Settlement.

76.    Accordingly, the Court hereby orders that any actions or proceedings pending in any court in the United States involving F1807 Fittings, except any matters necessary to implement, advance, or further approval of the Agreement or settlement process, are stayed pending the final fairness hearing and the issuance of a final order and judgment.  This specifically includes, without limitation, the lawsuits listed on the schedule that is attached hereto as Exhibit A.

### Final Fairness Hearing

77.    Pursuant to Federal Rule of Civil Procedure 23, the Court has scheduled the final fairness hearing to take place on February 25, 2013, at 9:00 a.m. in Courtroom 13W, at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, to determine whether the proposed Settlement is fair, reasonable, and adequate, to consider any objections by members of the Settlement Class, and to consider an award of reasonable attorneys' fees and expenses and an award to the class representatives.

78.    At least seven (7) days before the final fairness hearing, the parties shall file a motion requesting that the Court grant final approval of the Settlement embodied in the Agreement and that the Court enter a final order and judgment consistent with the terms of the Agreement, in final form required by Agreement and as submitted by the Settling Parties. At that time, Class Counsel may also file a petition for an award of attorneys' fees and reimbursement of expenses.

79.     Before the final fairness hearing, the Settling Parties may file memoranda of law responding to any objections to the Settlement as well as any other issues that require input from the Court.

**IT IS SO ORDERED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
Ann D. Montgomery
United States District Judge


Dated:  October 18, 2012