UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

In Re: Zurn Pex Plumbing          Court File No. 08-MDL-1958 ADM/AJB
Products Liability Litigation

This Document Relates to:

    *All Actions*

_____

**Order Granting Final Approval of Class Action Settlement**
_____

On February 25, 2013, the undersigned United States District Judge heard oral argument on a joint Motion for Final Approval of Class Action Settlement [Docket Nos. 239 and 244] ("Motion for Final Approval"). Before doing so, the Court reviewed the briefs, affidavits, and other materials submitted by the parties. For the reasons set forth below, the Motion for Final Approval is **GRANTED**.

## I.      BACKGROUND

This multidistrict litigation ("MDL") concerns brass fittings sold by Zurn Pex, Inc. and Zurn Industries LLC (collectively the "Zurn Defendants") throughout the United States from 1996 to 2010. See generally Aff. of Shawn Raiter in Supp. of Mot. for Final Approval and in Supp. of Mot. for Atty. Fees [Docket No. 250] ("Raiter Aff."). Plaintiffs contend that the fittings are defective, a contention disputed by the Zurn Defendants. Id. ¶ 9. The Zurn Defendants do not know how many homes or buildings contain the brass fittings at issue here ("F1807 Fittings") or exactly where those systems are located. Id. The evidence

suggests that there are hundreds of thousands of individuals and entities who own systems containing F1807 Fittings located throughout the United States. Id.

The first putative class action against the Zurn Defendants, Cox v. Zurn Pex, Inc. and Zurn Industries, LLC, No. 07-cv-03652, was filed August 8, 2007. See Cox Compl. [Cox Docket No. 1]. That complaint asserted a number of claims about the F1807 Fittings the Zurn Defendants sold under ASTM standard F1807. Additional cases were filed as putative class actions against the Zurn Defendants. The Cox Plaintiffs petitioned the Judicial Panel for Multidistrict Litigation ("JPML") to establish an MDL proceeding, and the petition was granted to transfer all pending cases to this Court for pretrial coordination.

The parties engaged in substantial litigation beginning in 2007, and the Court is familiar with their efforts and the adversarial nature of this litigation. Raiter Aff. ¶ 11. In early 2012, Chief Magistrate Judge Arthur J. Boylan began presiding over arms' length negotiations, which involved Plaintiffs' counsel, counsel for the Zurn Defendants, insurance coverage counsel for the Zurn Defendants and their insurers, and insurance company representatives. Id. ¶ 20. The parties negotiated in six all-day settlement conferences and numerous follow-up communications with Magistrate Judge Boylan between February 2012 and August 2012 before they reached a settlement on most materials terms. Id. The parties reached final agreement in October 2012. Id. ¶ 22.

On October 18, 2012, the Court granted preliminary approval to a proposed class action settlement and approved the form and method of dissemination to the class members. Order, October 18, 2012 [Docket No. 219] ("Class Certification Order"). A settlement group was preliminarily approved for owners of properties that contain a

plumbing system with F1807 Fittings. For class members who have had an F1807 Fitting leak, the settlement will pay up to 60 percent of the damage caused by the leak with a per-leak cap of $100,000. Raiter Aff. Ex. A ("Settlement Agreement")[1] ¶ 117. For class members with structures smaller than 20,000 square feet that have two or more leaks, the settlement will pay up to 60 percent of related damage and will provide a replumb benefit of up to $7,000 for the replacement of the Zurn system. Id. ¶ 121. For a class member who is experiencing a reduction in water flow because of corrosion of F1807 Fittings, the settlement will pay remediation costs, or for replumb benefits if remediation is not feasible, up to $7,000 for structures smaller than 20,000 square feet. For class members with structures 20,000 square feet or more that have five or more leaks, the settlement will pay up to 60 percent of related damage and will provide a replumb benefit, all up to the overall $100,000 cap. Similar benefits are available for class members who previously experienced a leak or reduction in flow. Id. ¶¶ 123-127. Benefits are also available for persons and entities, such as insurance companies or contractors, who paid for damage caused by leaks of F1807 Fittings. This is an opt-out settlement under Rule 23 of the Federal Rules of Civil Procedure. Id. ¶¶ 81-89.

The Zurn Defendants will pay up to $20 million to fund the payment of damage and repair claims made by class members. Id. ¶ 63. The parties negotiated a funding schedule to ensure that claims are paid in a timely manner and that the settlement fund remains adequate for future claims. Id. ¶ 64-65. Payments made to class members will be made at a reduced

---

[1] The Court will summarize the benefits herein. They are more fully set forth in the parties' Settlement Agreement, which is the controlling document as to benefits.

amount until the claim history provides sufficient evidence that past and future claimants will be treated similarly.  Id. ¶ 65.

Class members have at least twelve months to make a claim for past leaks, and the claim period runs for seven years.  Id. ¶ 128.  The leak and reduction-in-flow remedies are not mutually exclusive—a class member may recover under the flow-differential remedy, and if that class member suffers a leak of an F1807 Fitting, under the leak remedy as well.  The settlement treats past and future claimants identically, offering them the same benefits.

The Zurn Defendants also agreed to fund the entire claim administration, class-notice process, and attorneys' fees, costs, and service awards.  Id. ¶¶ 62, 104.  The Zurn Defendants agreed to pay attorneys' fees, costs, and expenses up to $8,500,000 to be paid separately from the funds available to pay class members.  Id. ¶¶ 62, 101, 102.  The Zurn Defendants also agreed to pay the more than $1 million cost of providing notice to the class, in addition to paying the claims administration and class representative service awards.  Id. ¶ 70.  The Zurn Defendants will compensate the class representatives who provided depositions up to $7,500 per abode and up to $5,000 per abode to the other class representatives, subject to the Court's approval of such awards.  Id. ¶ 103.

After the settlement was preliminarily approved, the parties carried out the notice program, hiring an experienced consulting firm to design and implement the plan.  Affidavit of Cameron R. Azari ("Azari Aff.") [Docket No. 243]. The plan consisted of direct mail notices to known owners and warranty claimants of the F1807 Fittings, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines that target home and property owners, and

earned media efforts through national press releases and the settlement website. Id. ¶¶ 9, 18-33.

The notice plan resulted in the notice reaching at least 80.6 percent of potential class members, on average more than two notices each. Id. ¶ 10. Notice of the settlement was mailed to state Attorneys General, the U.S. Attorney General, and the appropriate representatives of United States territories, in accordance with the Class Action Fairness Act of 2005 ("CAFA"). Id. ¶ 16. None of the Attorneys General responded to the Notice, requested more information, or sought intervention into this litigation. Raiter Aff. ¶ 7.

Class member reaction has been positive. Out of thousands of class members, no objections were received. Only 53 requests for exclusion were received. Id. ¶ 8. Claims processing has not yet started, but several hundred claim forms have already been filed, and there have been more than 117,000 unique visitors to the settlement website, www.PlumbingFittingSettlement.com. Azari Aff. ¶¶ 31, 35.

## II.    DISCUSSION

The Court must determine whether the settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and at least one prong of Rule 23(b). Upon determining that the class satisfies Rule 23, the Court will then analyze the settlement itself, as well as class member reaction to the settlement.

### A.    Settlement Class Certification

Rule 23(a) requires as a prerequisite for class certification that the following be shown: (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the representative parties' claims or defenses are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class interests. Fed. R. Civ. P. 23(a)(1–4). Once the Rule 23(a) prerequisites are met, the class action may be maintained if the court determines that a Rule 23(b) factor is met, including that questions of law common to the class predominate over individual member questions and that a class action is the superior method for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

1.      **Rule 23(a) Prerequisites.**

The settlement class here meets all the prerequisite requirements of Rule 23(a). Numerosity is present because there are thousands of class members. See, e.g., Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 574 (D. Minn. 1995) (approving of classes with as few as forty members); Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist., 446 F.2d 763, 765–66 (8th Cir. 1971) (approving class of twenty members); Horn v. Assoc. Wholesale Grocers, Inc., 555 F.2d 270, 275–76 (10th Cir. 1977) (approving class of 48 members). Given the numerosity of class members, joinder is impracticable and no party or class member has challenged numerosity. The Court finds the class sufficiently numerous to satisfy Rule 23(a)(1).

There are sufficient questions of law and fact common to the class members and the claims and defenses applicable to the class representatives are typical of the class. The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995) (citations and internal quotations omitted). "When the claim arises out of the same legal or remedial theory, the presence of factual

variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977). Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." Id. at 830; see also E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977). Because commonality and typicality are similar, the Eighth Circuit requires under typicality that the class representative demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff." Paxton v. Union Nat'l Bank, 688 F.2d 552, 562 (8th Cir. 1982) (quoting Donaldson, 554 F.2d at 830).

Here, common issues of law and fact exist, and the defenses and claims are typical throughout the class. The owners of the F1807 Fittings have a similar concern, which is whether the F1807 Fittings are defective and meet warranties. Each class member owns property containing a plumbing system with F1807 Fittings, each claims the system contains defective fittings, and each seeks damages from the Zurn Defendants. All class members have the same interests and remedial theories, and the class therefore meets the commonality and typicality factors. See In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 618-620 (8th Cir. 2011).

The final Rule 23(a) prerequisite is satisfied because the class counsel and representatives are adequate. Adequacy of representation is satisfied where: "(1) the class representatives have common interests with the members of the class, and (2) . . . the class representatives will vigorously prosecute the interest of the class . . . ." In re Zurn Pex Plumbing Prods. Liab. Litig., 267 F.R.D. 549, 560 (D. Minn. 2010). The interests of the class have been fairly and adequately protected by class counsel and class representatives. Class

counsel are experienced complex litigation firms with significant resources and class action experience. Many of the firms have experience litigating claims involving pex plumbing systems and related fittings. <u>See, e.g., In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.</u>, No. 11-MD-2247, 2012 WL 2512750 (D. Minn. June 29, 2012).

Further, the class representatives' interests are identical to those of absent class members, they seek the same form of relief, and they have demonstrated their commitment through their diligent litigation of this matter. "The adequacy of class representation . . . is ultimately determined by the settlement itself." <u>DeBoer</u>, 64 F.3d at 1175 (citation omitted). As discussed throughout this Order, the Court finds the settlement achieved to be an excellent result for the class members. The settlement here was reached after arm's-length negotiation and after years of investigation, discovery, motion practice, and trial preparation. <u>See</u> <u>Petrovic v. Amoco Oil Co.</u>, 200 F.3d 1140, 1146 (8th Cir. 1999). There was no collusion between class counsel and the Zurn Defendants, and settlement discussions were overseen by Magistrate Judge Arthur Boylan.

There are no inherent conflicts between the interests of the class representatives and the absent class members. "In order to satisfy the adequacy requirement, the Plaintiffs must show 'that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.'" <u>In re Hartford Sales Practices Litig.</u>, 192 F.R.D. 592, 604 (D. Minn. 1999) (quoting <u>In re Potash Antitrust Litig.</u>, 159 F.R.D 682, 692 (D. Minn. 1995)). No class member has questioned the competence of the class representatives and their counsel, their ability, or

their willingness to vigorously prosecute this action. The class representatives and their counsel are adequate.

## 2.      Rule 23(b)(3)

In addition to satisfying the Rule 23(a) prerequisites, the proposed class here also satisfies Rule 23(b)(3) because common questions of law predominate and class action is the superior method of adjudication. When a class is being certified for settlement, the Court need only analyze the predominance of common questions of law and the superiority of class action for fairly and effectively resolving the controversy; it need not examine Rule 23(b)(3)(A–D) manageability issues, because it will not be managing a class action trial. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997); see also In re Lutheran Broth. Variable Ins. Prods. Co. Sales Practices Litig., No. 99-MDL-1309, 2004 WL 2931352, at *8 (D. Minn. Dec. 16, 2004). However, this means that "other specifications of the Rule— those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." Amchem, 521 U.S. at 620.

### a.      Predominance of Common Issues of Law and Fact

To determine whether common issues of law and fact predominate, the Court analyzes whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. at 623. The Court is to "conduct a limited preliminary inquiry, looking behind the pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class." In re Zurn Pex, 267 F.R.D. at 560 (quoting Blades v. Monsanto

Co., 400 F.3d 562, 566 (8th Cir. 2005)); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011) (commonality asks whether common evidence can provide a common answer applicable to the class members).

The class representatives here, as well as the absent class members, seek to remedy a shared legal grievance concerning defective F1807 Fittings. The common remedial theories—repair, replace, restore—were all addressed in the negotiations and in the settlement. Common questions of law predominate here.

### b.      Superiority of Class Action

A class action settlement is the superior method of resolving this dispute fairly and effectively. Settlement of the class action avoids duplicative litigation, saving both plaintiffs and the Zurn Defendants significant time and legal costs to adjudicate common legal and factual issues. The settlement provides substantial remedies to thousands of class members, reimbursing them for damages and repairs caused by leaks and flow reduction related to the F1807 Fittings. The vast majority of class members have not expressed interest in individually prosecuting separate actions. Because this is an opt-out settlement, those who wish to pursue their own claims are free to do so. For these reasons, a class settlement is the most effective way of resolving thousands of potential individual controversies arising from members of this class.

### B.      Settlement Approval

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." White v. Nat'l Football League, 822 F. Supp. 1389, 1416 (D. Minn. 1993); see also Liddell v. Bd. Of Educ., 126 F.3d 1049,

1056 (8th Cir. 1997). Under Rule 23, a class action settlement agreement must be "fair, reasonable, and adequate" to be approved. Fed. R. Civ. P. 23(e)(2); See also Petrovic, 200 F.3d at 1148. "To determine whether a settlement satisfies these standards, the Court must consider: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." In re Airline Ticket Comm'n Antitrust Litig., 953 F. Supp. 280, 282 (D. Minn. 1997) (quoting Van Horn v. Trickey, 840 F.2d 604, 607 (8th Cir. 1988)).

Additionally, courts give "great weight" to and may "rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." Welsch v. Gardebring, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (citations omitted). The court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement . . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial." White, 822 F. Supp. at 1417 (internal quotations and citations omitted). Settlement agreements are presumptively valid, Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1, 921 F.2d 1371, 1391 (8th Cir. 1990), particularly where "a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors." In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92, 102 (D. N.J. 2012).

The settlement here is presumptively valid, given the arm's-length negotiations supervised by Magistrate Judge Boylan, the extensive discovery conducted over more than five years of litigation, the substantial experience of both plaintiff and defense attorneys, and

the absence of even a single objection to the settlement. This litigation started in August 2007. Before reaching a settlement, the parties conducted extensive discovery and factual investigation, participated in substantial motion practice, subpoenaed and deposed third parties, and engaged experts and analyzed the F1807 Fittings. Raiter Aff. ¶¶ 11-14.

Counsel involved here are experienced complex case litigators, both in class action work generally and in pipe-fitting litigation specifically. See Section II(A)(1). Having presided over this MDL since its creation, the Court is very familiar with the efforts of counsel, the adversarial nature of the litigation, and the strengths and weaknesses of the claims and defenses. The Court is satisfied that this settlement was arms' length and was negotiated by experienced counsel after substantial litigation. The settlement is therefore presumptively valid. See 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval."); Reed v. Gen. Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983).

### 1. Merits of Case vs. Settlement Terms

Even if the settlement was not presumptively valid, the settlement satisfies the fairness criteria laid out by the Eighth Circuit Court of Appeals. The critical consideration is the strength of plaintiffs' case on the merits versus the amount offered in the settlement. See Petrovic, 200 F.3d at 1150. In analyzing merits, the Court need not "go beyond an amalgam of delicate balancing, gross approximation, and rough justice." White, 822 F. Supp. at 1417 (internal quotation and citation omitted).

The settlement terms here are generous, offering class members replacement or repair of their fittings, as well as compensation for property damaged by leaks. The settlement provides up to $20 million to compensate class members. Additional expenses, such as attorneys' fees, administration costs, and notice costs, are all shouldered by the Zurn Defendants and do not diminish class members' recovery. See Settlement Agreement ¶¶ 70, 101. The settlement terms reflect the strength of the Plaintiffs' claims and obviate the need for lengthy litigation. The quality of settlement terms from class members' perspective, weighed against the capricious uncertainty, extensive time, and costs inherent in complex trial litigation, merits approval of this settlement.

## 2. The Zurn Defendants' Financial Condition

No class member has suggested that the Zurn Defendants' financial condition should have resulted in a better settlement. Class counsel considered the available insurance coverage, the effect of previous claims paid, and the coverage defenses raised by insurers in arriving at the current settlement.

## 3. Complexity and Expense of Further Litigation

The complexity and expense of class action litigation is well-recognized. Schmidt v. Fuller Brush Co., 527 F.2d 532, 535 (8th Cir. 1975) ("[r]ecognizing that class actions place an enormous burden of costs and expense upon the parties . . ."). As has been noted in other class action cases, the various procedural and substantive defenses likely to be argued by the Zurn Defendants, the expense of proving class members' claims, the certainty that resolution under this settlement will foreclose any subsequent appeals, and the fear that, unsettled, the "ultimate resolution of the action . . . could well extend into the distant

future," all weigh in favor of the settlement's approval. <u>Snell v. Allianz Life Ins. Co. of N. Am.</u>, No. Civ. 97-2784, 2000 WL 1336640, at *16 (D. Minn. Sept. 8, 2000).

### 4. Amount of Opposition to Settlement

There was no opposition to the settlement. This is remarkable given the size and scope of this litigation. The absence of any opposition to the settlement strongly supports final approval. <u>Petrovic</u>, 200 F.3d at 1152 (approving settlement where less than 4 percent of class objected); <u>Stoetzner v. U.S. Steel Corp.</u>, 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that objections by 10 percent of a class "strongly favors settlement"). Although not dispositive, "[t]he fact that only a handful of class members objected to the settlement similarly weighs in its favor." <u>DeBoer</u>, 64 F.3d at 1178.

### C. The Notice and Dissemination of the Notice Complied With Due Process.

The parties carried out the notice plan the Court approved in its order granting preliminary approval of the settlement. No class member objected to the form of the notice, its content, or the plan for disseminating the notice. The parties have submitted evidence that the notice plan approved by the Court was carried out as directed by the Court's prior order. <u>See</u> Azari Aff.

The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center. <u>Id.</u> ¶¶ 38-41.

The parties did not know exactly how many homes or buildings contain F1807 Fittings or where those systems are located. As a result, the parties carried out a multi-

faceted notice program intended to provide the best notice practicable and which complied with Due Process requirements for Rule 23 opt out settlements. That plan included direct mail notice to all known class members and a nationwide campaign to publish notice of the settlement. Id. ¶ 9.

The publication of the notice included notices published in nationwide newspaper supplements *Parade* and *USA Weekend*, which appear in 1,200 Sunday newspapers and have a combined circulation of more than 55 million, as well as published notice in leading consumer and industry publications designed to target home and property owners, such as *People*, *Contractor,* and *Buildings* magazines. Id. ¶¶ 22-24. Internet banner notices were also used on three major national online networks (AOL, Facebook, and 24/7 Real Media), making 460 million adult impressions in one month. Id. ¶¶ 27-28.

The notice plan also included "earned" media efforts through a national press release issued to 4,200 print and broadcast outlets and 5,500 online outlets. Id. ¶ 29. Case-related information and documents are available online at the settlement web site, www.PlumbingFittingSettlement.com. Id. ¶ 31. A toll-free telephone number that provides class members with information and directs them to the settlement web site was staffed with live operators during regular business hours. Id. ¶ 33. This notice plan reached a minimum of 80.6 percent of potential class members on average 2.5 times each. Id. ¶ 10.

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. In re Domestic Air Transp. Antitrust Litig., 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); Manual for Complex Litigation §

21.311, at 288 (4th ed. 2004).  In situations such as this action, where class members cannot be identified for purposes of sending individual notice, notice by publication is sufficient. Mullane v. Cent.  Hanover Bank & Trust Co., 339 U.S. 306, 317-18 (1950); see also Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 786 (7th Cir. 2004); Kaufman v. Am. Express Travel Related Servs. Co. Inc., 264 F.R.D. 438, 445-46 (N.D. Ill. 2009); In re Vivendi Universal, S.A. Sec. Litig., 242 F.R.D. 76, 107 (S.D. N.Y. 2007).

The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).  See, e.g., In re Holocaust Victims Assets Litig., 105 F. Supp. 2d 139, 144 (E.D. N.Y. 2000) (approving plan involving direct-mail, published notice, press releases and earned media, Internet, and other means of notice).  "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment."  In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 306 (3d Cir. 1998).

Notice of the settlement was provided to the appropriate state and federal attorney general representatives as required by 28 U.S.C. § 1715 ("CAFA notice").  Azari Aff. ¶¶ 16-17.  The CAFA notice included a CD of the Settlement Agreement, the class notice documents, the preliminary approval order, and other case-related documents.  Id. ¶ 17. None of the attorney general recipients objected, requested more information, or sought to intervene into this litigation.  Raiter Aff. ¶ 7.  The Court concludes that the parties complied with the CAFA notice requirements.

The notice of this settlement complied with the due-process requirements of a Rule 23 class action settlement. As in <u>Petrovic,</u> "the mailed notice provided a reasonable summary of the stakes of the litigation, and class members could easily acquire more detailed information . . . through the telephone number" and website provided in this case. 200 F.3d at 1153. The short- and long-form notices here directed class members to visit the settlement website for more information, and the website contains a copy of the Settlement Agreement and this Court's preliminary approval order. "Due process requires no more." <u>Id.</u>

## III.   CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.      The Motion for Final Approval of Class Action Settlement [Docket No. 244] is **GRANTED**.

2.      The class action settlement previously preliminarily approved by the Court is fair, reasonable, and adequate under the circumstances and is granted final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure;

3.      The terms of the parties' Settlement Agreement are hereby incorporated as the Order of this Court;

4.      The Court approves and certifies a Rule 23 (b)(3) settlement class defined as:

All Persons that own or have owned buildings, homes, residences or any other structures located in the United States that contain or have ever contained F1807 Fittings. Also included in this class are all such Persons' spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all Persons who have vested legal

rights such that they have legal standing and are entitled to assert a claim on behalf of such Settlement Class Members for Leaks or Occlusions. Insurance carriers are members of the Settlement Class for Leaks and Occlusions if they paid insurance claims for Leaks or Occlusions prior to the date of the Preliminary Approval Order and thereby obtained legally vested subrogation rights.

Persons who seek contribution or indemnity from the Zurn Defendants on past settlements of claims with Settlement Class Members involving Leaks or Occlusions are members of the Settlement Class for those Leaks and Occlusions if they paid those settlements prior to the date of the Preliminary Approval Order and thereby obtained vested legal rights to pursue such contribution or indemnity claims. To the extent there may in the future be subrogated insurance carriers or Persons who seek contribution or indemnity from the Zurn Defendants because of vesting of legal rights that occurs after the date of the Preliminary Approval Order, they shall not be Settlement Class Members, but the rights that they take through a Settlement Class Member shall be limited by all of the terms, time periods, releases, caps, no double recoveries and other provisions of this settlement.

5.     The Court appoints the following individuals and entities as class representatives for the settlement class:  Denise and Terry Cox; Jody and Brian Minnerath; Christa and Kevin Haugen; Carrie and Robert Hvezda; Michelle Oelfke; Beverly Barnes and Brian Johnston; Bridget and Paul Bohn; Charles A. Breaux, Sr.; Coppersmith Plumbing; Darla and Anthony Kolker; Judith Nicodemus; Brenda and Brian Rose; Donovan and Alyssa Shaughnessy; and Don Vtipil;

6.     To represent the settlement class and its members, the Court appoints Shawn M. Raiter of Larson • King, LLP as Lead Class Counsel and the following attorneys as Class Counsel:  Robert Shelquist of Lockridge Grindal Nauen, PLLP; Charles LaDuca of Cuneo, Gilbert & LaDuca, LLP; Christopher Coffin of Pendley, Baudin & Coffin, LLP; David Black of Perkins Coie LLP; Michael McShane of Audet & Partners, LLP; J. Gordon Rudd of Zimmerman Reed PLLP; Daniel K. Bryson and Gary E. Mason of Whitfield, Bryson &

Mason, LLP; Joel R. Rhine of Rhine Law Firm, P.C.; Mark J. Schirmer of Straus & Boies, LLP; and Rhett A. McSweeney of McSweeney/Langevin;

7. The notice provided to the class was reasonable and the best practicable notice reasonably calculated under the circumstances to apprise class members of the pendency of this actions, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;

8. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center;

9. The notice provided to the attorney general representatives complied with 28 U.S.C. § 1715 and more than 90 days' notice was provided before the final fairness hearing was held in this matter;

10. Class members who did not file a timely and valid request for exclusion from this settlement are bound by the releases provided in the Settlement Agreement (¶¶ 84, 85, 90-100);

11. The injunction issued in the Court's Order Granting Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement and Form and Dissemination of Notice to the Class [Docket No. 219] shall be **LIFTED** thirty (30) days after the date final judgment is issued in this matter;

12. Class members who did not file a timely and valid exclusion are enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), any other lawsuit, arbitration, or administrative, regulatory, or other

proceeding or order in any jurisdiction based on or relating to their F1807 Fittings, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, or the Settlement Agreement except for claims reserved or not released in the Settlement Agreement;

13. The Settlement Agreement does not bar a party from filing, commencing, prosecuting, maintaining, intervening in, or participating in (as class members or otherwise), any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order against any non-Zurn Defendant, including, but not limited to, builders and contractors, related to the subject matter of the Settlement Agreement;

14. The settlement class members' claims against parties other than the Zurn Defendants, including but not limited to developers, builders, designers, plumbers, installers, and other manufacturers of pex plumbing systems, shall not be released by the Settlement Agreement.

15. As provided in the Settlement Agreement, the release entered into by the settlement class members and the Zurn Defendants shall be construed to have the effect of the releases in Pierrienger v. Hoger, 124 N.W.2d 106 (Wis. 1963), and Frey v. Snelgrove, 269 N.W.2d 918 (Minn. 1978), as set forth in paragraph 95 of the Settlement Agreement, with the sole exception that, in California, Hawaii, and states that have equivalent good faith settlement statues, the provisions of the Settlement Agreement constitute a good faith settlement and will be so construed under the good faith settlement statutes in those forums. See California Code of Civil Procedure §§ 877 and 877.6, Hawaii Revised Statutes 663-15.5.

In any case, the Zurn Defendants will not be liable for contribution or indemnity claims related to underlying claims made by class members and resolved through the Settlement;

16. Without affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over this case and the parties, including all owners of plumbing systems with F1807 Fittings and their representatives who did not file a timely and valid request for exclusion from this settlement, concerning the administration, consummation, claim procedures, and enforcement of the settlement and the benefits to the class members thereunder;

17. Without affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over any disputes about the validity or scope of requests for exclusion from this settlement and any dispute about the scope of or interpretation of the Settlement Agreement.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE


Dated: February 27, 2013