UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: Zurn Pex Plumbing<br>Products Liability Litigation | Court File No. 08-MDL-1958 ADM/AJB |
| This Document Relates to:<br><br>*All Actions* | |

**Order Granting Motion for an Award of Service Payments to Class Representatives and for an Award of Attorneys' Fees, Costs, and Expenses to Class Counsel**

On February 25, 2013, the undersigned United States District Judge heard oral argument on Plaintiffs' Motion for an Award of Service Payments to Class Representatives and for an Award of Attorneys' Fees, Costs, and Expenses to Class Counsel [Docket No. 247]. Based upon the pleadings, memoranda, arguments of counsel, and after considering the entire file in this matter and being fully advised, it is hereby ordered that the Motion is **GRANTED**.

I. BACKGROUND

The Plaintiffs in this litigation alleged that Zurn Pex, Inc. and Zurn Industries LLC (collectively the "Zurn Defendants") sold defective brass fittings that were used in plumbing systems sold under standard ASTM F1807 ("F1807 Fittings"). The Zurn Defendants denied that the fittings were defective and asserted defenses. In 2008, the Judicial Panel for Multidistrict Litigation established an MDL proceeding and transferred all pending actions to

the District of Minnesota for pretrial coordination. Fifteen putative class actions and a number of individual actions have been coordinated in this litigation.

After substantial discovery, class certification, and an appeal to the Eighth Circuit Court of Appeals, Plaintiffs and the Zurn Defendants engaged in settlement discussions. After months of arm's-length negotiations facilitated by Chief Magistrate Judge Arthur J. Boylan, the parties reached agreement on material terms in August 2012 and finalized a proposed settlement in October 2012.

On October 15, 2012, the parties presented the proposed settlement to the Court for preliminary approval. There was no opposition. The Court issued an order on October 18, 2012, that: (1) granted preliminary approval of the settlement; (2) preliminarily certified a settlement class; (3) appointed class representatives for the settlement class; (4) appointed class counsel ("Class Counsel"); (5) approved a notice plan and directed that notice be provided to potential class members; and (6) scheduled a final fairness hearing.

Under the Settlement Agreement, the Zurn Defendants agreed to pay class counsel up to $8.5 million for attorneys' fees, costs, and expenses. Aff. of Shawn Raiter in Supp. of Mot. for Final Approval and in Supp. of Mot. for Atty. Fees [Docket No. 250] ("Raiter Aff.") Ex. A ("Settlement Agreement") ¶ 101. The Settlement Agreement also authorizes class counsel to petition the Court for class representative service awards for the class representatives as follows: (1) $7,500.00 per home/abode to Denise and Terry Cox, Jody and Brian Minnerath, Christa and Kevin Haugen, Carrie and Robert Hvezda, and Michelle Oelfke; and (2) $5,000.00 per home/abode to Beverly Barnes and Brian Johnston, Bridget and Paul Bohn, Charles A. Breaux, Sr., Coppersmith Plumbing, Darla and Anthony Kolker,

Judith Nicodemus, Brenda and Brian Rose, Donovan and Alyssa Shaughnessy, and Don Vtipil. Settlement Agreement ¶ 103.

After carrying out the notice plan and receiving no objections to any aspect of the settlement, the parties filed their moving papers seeking final approval of the settlement. Class counsel and the plaintiffs also moved for an award of attorneys' fees and expenses and class representative service awards. The Court held a final fairness hearing on February 25, 2013, and granted the parties' joint, unopposed motion for final approval of the settlement in an order dated February 27, 2013.

## II. CLASS REPRESENTATIVE SERVICE AWARDS

Pursuant to the Settlement Agreement, class counsel request service payments to the class representatives in the amount of either $7,500.00 or $5,000.00, depending on whether the representative was deposed. Settlement Agreement ¶ 103. Service award payments are regularly made to compensate class representatives for their help to a class. See, e.g., In re Xcel Energy, Inc., Sec., Derivative, & "ERISA" Litig., 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) ($100,000 award to lead plaintiffs in a securities class action case); White v. Nat'l Football League, 822 F. Supp. 1389, 1406 (D. Minn. 1993) (citing cases).

The service payments sought under the settlement reflect the efforts by the class representatives to gather and communicate information to counsel and act as the public face of the litigation. The class representatives opened their homes up to inspection and testing, some of them more than once. Each assisted with the investigation and preparation of these suits, gathered documents for production, and helped class counsel. Some of the class representatives gave depositions. The class representatives stayed abreast of the cases from

3

the outset and have performed a valuable service to class members and the public as a whole.

The requested payments of either $7,500.00 or $5,000.00 to the class representatives are reasonable when compared to awards of service payments in other cases. See, e.g., Austin v. Metro. Council, Civ. No. 11-3621, at ¶ 48 (D. Minn. Mar. 27, 2012) (approving $20,000 award); see also Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (awarding $25,000 award); Brotherton v. Cleveland, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ($50,000 award); Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250-52 (S.D. Ohio 1991) ($50,000 service awards to each of six class representatives); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 33 (E.D. Pa. 1985) (approving $20,000 award to class representatives); Camp v. Progressive Corp., No. 01-2680, 2004 WL 2149079, at *6, *22 (E.D. La. Sept. 23, 2004) (awarding $102,000 to class representatives in a case in which the amount allocable to class members was $3.6 million); In re Linerboard Antitrust, No. MDL 1261, 2004 WL 1221350, at **18-19 (E.D. Pa. June 2, 2004) (awarding $25,000 to each of five class representatives); Sheppard v. Consol. Edison Co. of N.Y., Inc., No. 94-CV-0403, 2002 WL 2003206, at **6-7 (S.D.N.Y. Aug. 1, 2002) (three of six class representatives awarded $25,000 or more).

No class member has objected to these proposed awards and the Court approves the requested $7,500.00 and $5,000.00 service awards.

### III. ATTORNEYS' FEES AND EXPENSES

Class counsel requests reimbursement of attorneys' fees and expenses of $8.5 million, an amount agreed upon by the parties. Settlement Agreement ¶ 101. The Court finds that

the requested attorneys' fees and expenses are appropriate and reasonable under the circumstances. No class member has objected to the requested attorneys' fees and expenses.

A district court has wide discretion to award attorneys' fees. Petrovic v. Amoco Oil, Co., 200 F.3d 1140, 1157 (8th Cir. 1999). "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." In re Xcel Energy, 364 F. Supp. 2d at 994. The Eighth Circuit has established factors that a district court should consider to determine whether requested attorneys' fees are reasonable: (1) "the number of hours spent in various legal activities by the individual attorneys"; (2) "the reasonable hourly rate for the individual attorneys"; (3) "the contingent nature of the success"; and (4) "the quality of the attorneys' work." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 127 (8th Cir. 1975); see also In re Xcel Energy, 364 F. Supp. 2d at 992.

The reasonableness of an award can include evidence of an arm's-length negotiation or an agreement by the defendant to a certain amount that does not impact the relief afforded to the class. See Snell v. Allianz Life Ins. Co. of N. Am., No. 97-2784, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000) (a court's "acceptance of the fee request is facilitated by the fact that the fee amount was independently negotiated by the settling parties, and comes from a source that does not impact upon the total settlement fund that is available to the Class"); see also DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1178 (8th Cir. 1995) (affirming district court's grant of fee award where the vast majority was to be paid by the defendant, separate from any class recovery), cert. denied, 517 U.S. 1156 (1996).

Throughout this litigation, class counsel invested significant time and expense and faced real risk in cases that involved vigorously contested allegations, considerable discovery

5

efforts, and complex issues of fact and law. To a large degree, the settlement and resolution of the complex issues present in this MDL litigation are the result of the diligence and focus of class counsel. The Zurn Defendants strenuously defended this litigation and class counsel were confronted with challenges created by a team of skilled defense attorneys.

In considering this fee request, the Court respects that the amount requested and agreed upon was the product of arm's-length negotiations conducted by Chief Magistrate Judge Boylan. The fact that fees and expenses will be paid separate from, and in addition to the class members' benefits, is an important consideration. Because the Zurn Defendants agree to pay the fees and costs separately from the benefit to the class, the Court "may rely on summaries submitted by the attorneys and need not review actual billing records." In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d Cir. 2005).

Class counsel seeks reimbursement of fees based on a lodestar analysis of the time and expense invested in the case. Under a lodestar analysis or a common-benefit analysis, the fee request is reasonable under the circumstances of this litigation. Class counsel spent extensive time on this litigation. The Court has reviewed class counsel's motion for attorneys' fees and finds that the time spent and its resulting lodestar represents a reasonable number of hours spent by timekeepers with the appropriate levels of experience.

Class counsel's lodestar is determined by multiplying the number of hours reasonably expended on the litigation by the timekeeper's hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 447-49 (1983). "[I]n cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality

6

work." In re United Health Grp., Inc. PSLRA Litig., 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009). "The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases." In re Xcel Energy, 364 F. Supp. 2d at 999.

"[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." Mashburn v. Nat'l Healthcare Inc., 684 F. Supp. 679, 687 (M.D. Ala. 1988). "To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." Eltman v. Grandma Lee's, Inc., No. 82-CV-1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) (quotation omitted); see also In re WorldCom, Inc. ERISA Litig., No. 02-CV-4816, 2004 WL 2338151, at *10 (S.D.N.Y. Oct. 18, 2004) (noting in awarding attorneys' fees that "Lead Counsel has performed an important public service in this action. . ."); In re Monosodium Glutamate Antitrust Litig., No. CIV11MDL1328PAM, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003) ("The theory behind attorneys' fees awards in class actions is not merely to compensate counsel for their time, but to reward counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action.").

Class counsel's lodestar includes time only through February 2013 and does not include the additional time that class counsel will spend to bring this MDL litigation to a conclusion, counsel class members about the settlement, and oversee the distributions of payments and benefits to class members. Because the administration of claims will last for

seven years, class counsel will spend significant additional time on this litigation and settlement.

Class counsel calculated the requested fee amount by using their current class action rates. This is appropriate given the deferred nature of counsel's compensation. LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historic rates and adding a prime rate enhancement.").

The rates for the applicable timekeepers are set out in the Affidavit of Shawn M. Raiter, which was submitted in support of the request for attorneys' fees. These hourly rates are market rates similar to those charged by firms with expertise in class action and other complex litigation. See, e.g., Austin v. Metro. Council, Civ. No. 11-3621 at ¶ 57 (noting that $500 per hour was "at the lower end of complex class action rates approved in this District" and citing Yarrington v. Solvay Pharm., 697 F. Supp. 2d 1057, 1066 (D. Minn. 2010), which recognizes that partner rates ranging from $500-$800 "are based on prevailing fees for complex class actions of this type that have been approved by other courts."); see also In re Xcel Energy, 364 F. Supp. 2d at 989-90 (approving contingency fee of 25 percent of benefit and implicitly approving hourly attorney rates ranging from $200 to $650 in Rule 23 class action). The Court finds that

the hourly rates are reasonable in light of the nature of this litigation, the locations of the firms involved in the litigation, and the rates charged in similar litigation.

The Court finds that the total requested lodestar is reasonable considering the complex and wide-ranging nature of the case, the amount of discovery and motion practice undertaken, and the intricacy of the settlement negotiations. The total award of attorneys' fees and expenses of $8.5 million does not provide a lodestar enhancement or multiplier. The ongoing work in finalizing this litigation and administering claims for seven years will erode the fee award to a negative lodestar multiplier.

As part of the $8.5 million, class counsel seek reimbursement of $1,783,193.34 in costs and expense. No class member has objected to class counsel's requested reimbursement of costs and expenses. The Court finds that the requested costs and expenses are appropriate and reasonable. Such expenses are related and necessary to the prosecution of this type of litigation and are properly recovered by counsel who prosecute cases on a contingent basis. Yarrington, 697 F. Supp. at 1066. The costs will be reimbursed from the $8.5 million and will not reduce the benefits available to class members.

The Court, having reviewed and considered the motion and all related documents, evidence, and arguments of all counsel, and being fully advised, concludes that class counsel's request for service payment awards to class representatives is appropriate and the request for attorneys' fees, costs, and expenses is reasonable. Accordingly, the Motion for an Award of Service Payments to Class Representatives and for an Award of Attorneys' Fees, Costs, and Expenses to Class Counsel is **GRANTED**.

**IT IS HEREBY ORDERED**:

1. The terms of the parties' Settlement Agreement are incorporated herein and shall be followed and carried out by class counsel and the Zurn Defendants;

2. Class counsel's requested service payments for class representatives are appropriate and the requested award of $8.5 million for attorneys' fees, costs, and expenses is reasonable. There are no objections to the service payments or the attorneys' fees, costs, and expenses. The awards are approved.

3. In accordance with the terms of the parties' Settlement Agreement:

    a. The following class representatives are awarded a service payment in the amount of $7,500.00 per home or abode: Denise and Terry Cox; Jody and Brian Minnerath; Christa and Kevin Haugen; Carrie and Robert Hvezda; and Michelle Oelfke.

    b. The following class representatives are awarded a service payment in the amount of $5,000.00 per home or abode: Beverly Barnes and Brian Johnston; Bridget and Paul Bohn; Charles A. Breaux, Sr.; Coppersmith Plumbing; Darla and Anthony Kolker; Judith Nicodemus; Brenda and Brian Rose; Donovan and Alyssa Shaughnessy; and Don Vtipil.

    c. The Zurn Defendants must pay the class representatives service payments to Lead Class Counsel by the Effective Date of the Settlement Agreement.

4. Class counsel are awarded $8.5 million for attorneys' fees and reimbursement of the costs and expenses advanced in this litigation. Pursuant to the parties' Settlement Agreement, the Zurn Defendants shall pay $8.5 million in attorneys' fees and costs reimbursement to Lead Class Counsel within 30 days of the Effective Date. (Settlement Agreement ¶ 134).

5. Without affecting the finality of this order, the Court retains continuing

jurisdiction over this case and the parties, including all members of the class, concerning the administration and enforcement of the settlement and the Court's orders in this litigation.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 27, 2013